**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LEONARD K. TYSON, et al., | Case No.  15-cv-01548-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| BANK OF AMERICA N.A., et al., | |
| Defendants. | [Re:  ECF 58] |

Defendants Bank of America, N.A. ("BANA") and The Bank of New York as Trustee for the Certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2006-C ("BNYM") (collectively "Defendants") filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The Court, having considered the briefing submitted by the parties and the oral argument presented at the hearing on June 30, 2016, GRANTS Defendants' motion.

**I.    BACKGROUND**

The following information is taken from Plaintiffs' Complaint and Defendants' request for judicial notice ("RJN").[1]  On July 11, 2005, Plaintiffs obtained two mortgage loans, in the amounts of $3,000,000 and $500,000, to refinance their principal place of residence located at 13501 Paseo Del Roble Drive, Los Altos, California 94022 ("Property").  Compl. ¶ 1.  America's Wholesale Lender ("AWL"), a subsidiary of Countrywide Home Loans, was the original lender of the two loans.  *Id*. at ¶ 2.

---

[1] For the reasons explained *infra* at Section II.C, the Court GRANTS Defendants' request for judicial notice.

1    On January 31, 2008, Plaintiffs, through counsel, sent a letter to AWL accusing it of

2    violating the Federal Truth in Lending Act ("TILA") and demanding rescission of their loans. *Id.*

3    at ¶ 5; *see also* Exh. A to Compl., ECF 1-1. According to Plaintiffs, AWL provided them with

4    only four copies of a Notice of Right to Cancel instead of the eight copies required by TILA. Exh.

5    A. to Compl. at 1-2, ECF 1-1. Plaintiffs also allege that the four copies of the Notice of Right to

6    Cancel were defective because they did not indicate when the three-day cancellation began or the

7    final date to cancel the loans. *Id.* at 2. On February 20, 2008, Countrywide Home Loans

8    ("Countrywide") denied Plaintiffs' request to rescind their loans. Exh. B to Compl at 1, ECF 1-1.

9    In its response to Plaintiffs, Countrywide enclosed a form that was signed, dated, and initialed by

10   Plaintiffs acknowledging receipt of the required notices and disclosures under TILA. *Id.*

11   Countrywide also indicated that if Plaintiffs had additional information, they would consider

12   reopening Plaintiffs' claim to rescind the mortgage. *Id.*

13   On August 18, 2010, Plaintiffs filed for Chapter 7 bankruptcy United States Bankruptcy

14   Court for the Northern District of California. Exh. C to RJN, ECF 59-3. Plaintiffs listed both of

15   their loans and both creditors of the loans on their Schedule D. *Id.* at 20. Plaintiffs listed their

16   primary loan as due and owing $3,216,938.47 and their second loan as due and owing

17   $533,776.58. *Id.* Plaintiffs did not indicate that either loan was contingent or unliquidated. *Id.*

18   Plaintiffs bankruptcy petition and schedules did not list claims for TILA rescission, declaratory

19   relief, quiet title or mention any violation of TILA or of their right to rescind the loans. Exh. C to

20   RJN, ECF 59-3. On November 6, 2010, the bankruptcy court granted Plaintiffs a discharge under

21   11 U.S.C. § 727. Exh. D to RJN, ECF 59-4.

22   At some time after February 20, 2008, BANA acquired Countrywide. Compl. ¶¶ 2, 6.

23   Plaintiffs allege that BANA is the current beneficial owner and Nationstar is the servicer of the

24   $3,000,000 loan. *Id.* Plaintiffs believe that BANA sold or assigned the $500,000 loan to BNYM

25   after learning that Plaintiffs had attempted to rescind that loan. *Id.* Plaintiffs allege that BNYM is

26   the current beneficial owner and Real Time Resolutions is the servicer of the $500,000 loan. *Id.*

27

28

United States District Court
Northern District of California

1  On April 2, 2015, Plaintiffs brought this action seeking to rescind the two loans pursuant to TILA,

2  declaratory relief, and quiet title.  Compl., ECF 1-1.

3  **II.    LEGAL STANDARD**

4  **A.    Rule 12(c)**

5  Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay

6  trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A judgment on

7  the pleadings is properly granted when, taking all allegations in the pleadings as true, the moving

8  party is entitled to judgment as a matter of law."  *Enron Oil Trading & Transp. Co. v. Walbrook*

9  *Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997) (citing *McGann v. Ernst & Young*, 102 F.3d 390, 392

10  (9th Cir. 1996)).  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

11  presented to and not excluded by the court, the motion must be treated as one for summary

12  judgment under Rule 56."  Fed. R. Civ. P. 12(d).  A court, however, may "consider certain

13  materials—documents attached to the complaint, documents incorporated by reference in the

14  complaint, or matters of judicial notice—without converting the motion to dismiss into a motion

15  for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

16  **B.    Requests for Judicial Notice**

17  Defendants request judicial notice of four exhibits: (1) Deed of Trust recorded on July 27,

18  2005 in the Official Records of Santa Clara County as Document Number 18495803; (2) Deed of

19  Trust and Assignment of Rents recorded on July 27, 2005 in the Official Records of Santa Clara

20  County as Document Number 18495804; (3) Voluntary Petition filed on August 18, 2010 in the

21  United States Bankruptcy Court, Northern District of California, Case Number 10-58562; (4)

22  Discharge of Debtor filed on November 16, 2010 in the United States Bankruptcy Court, Northern

23  District of California, Case Number 10-58562.  RJN 2, ECF 59.  Plaintiffs do not object to

24  Defendants' request for judicial notice.

25  The Court finds that judicial notice is appropriate as to the existence of all four exhibits.

26  Exhibits 1 and 2 are public records that are recorded in the Santa Clara County Recorder's Office.

27  Exhibits 3 and 4 are court documents that are matters of public record.  *See Reyn's Pasta Bella,*

28  *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).  Accordingly, the Court GRANTS

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    Defendants' request for judicial notice as to all four exhibits.

2    **III.    DISCUSSION**

3       Defendants argue that Plaintiffs are judicially estopped from bringing this lawsuit based on

4    Plaintiffs' 2010 Chapter 7 Bankruptcy. Mot. 3-6, ECF 58. "[J]udicial estoppel is an equitable

5    doctrine invoked by a court at its discretion to protect the integrity of the judicial process."

6    *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 558 (9th Cir. 2016) (citing *New Hampshire v.*

7    *Maine*, 532 U.S. 742, 749-50 (2001)). "[It] precludes a party from gaining an advantage by

8    asserting one position, and then later seeking an advantage by taking a clearly inconsistent

9    position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts

10    may consider several factors in determining whether to apply the doctrine in a particular case,

11    including whether: 1) a party's later position is "clearly inconsistent with its earlier position," 2)

12    "the party has succeeded in persuading a court to accept that party's earlier position, so that

13    judicial acceptance of an inconsistent position in a later proceeding would create the perception

14    that either the first or the second court was misled," and 3) "the party seeking to assert an

15    inconsistent position would derive an unfair advantage or impose an unfair detriment on the

16    opposing party if not estopped." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th

17    Cir. 2013) (citing *New Hampshire*, 532 U.S. at 749-50 (2001)).

18       Defendants argue that judicial estoppel applies because Plaintiffs did not raise any of the

19    pending causes of action during their 2010 Chapter 7 bankruptcy. Mot. 3-6, ECF 58. As a result,

20    Defendants claim that Plaintiffs' conduct satisfies all the elements of judicial estoppel. *Id.* (citing

21    *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *Flores v. GMAC*

22    *Mortg.*, 2010 WL 582115 (E.D. Cal. 2010)). Plaintiffs counter that Defendants overlook the

23    impact of the Supreme Court's ruling in *Jesinoski v. Countrywide Home Loans*, --- U.S. --- , 135

24    S.Ct. 790 (2015).[2] Plaintiffs argue that prior to *Jesinoski*, Ninth Circuit law did not provide them

25    with a rescission claim. Opp. 7, ECF 60. According to Plaintiffs, at the time of their 2010

26

27    _____

     [2] Plaintiffs also make the claim, without citation or explanation, that *Jesinoski* placed "the burden on the lender to commence a lawsuit if it believed the borrowers['] claims for rescission were

28    improper." Opp. 5, ECF 65. The Court dispenses quickly of this argument as nothing in *Jesinoski* required lenders to bring a lawsuit in the face of an improper rescission attempt.

United States District Court
Northern District of California

bankruptcy, a borrower was required to tender any unpaid loan balance and commence litigation within 3 years to enforce the right of rescission. *Id*. Since Plaintiffs did not tender or commence actual litigation, Plaintiffs argue the bankruptcy court did not have power to adjudicate any rescission claim. *Id*.

The Court finds Plaintiffs are judicially estopped from pursuing their TILA and declaratory relief claims in this action. As to the first factor, Plaintiffs have clearly taken inconsistent litigation positions. In their voluntary bankruptcy petition, which they filed on August 18, 2010 and signed under penalty of perjury, Plaintiffs explicitly stated that they had no "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Exh. C to RJN at 15, ECF 59-3. In this action, Plaintiffs allege that in January 2008, more than two years prior to their bankruptcy filing, they discovered violations of TILA and demanded rescissions of their loans. These allegations are clearly inconsistent with their statements to the bankruptcy court that they had no contingent claims against any party. *See Hamilton*, 270 F.3d at 782 (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action).

Plaintiffs' contradictory arguments, that they disclosed their TILA claim in their bankruptcy schedule but at the same did not because they had no obligation to, are not persuasive. First, citing *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003), Plaintiffs argue that under then existing law, tender of the unpaid balance was a condition precedent to seeking rescission. Opp. 7, ECF 60. Since Plaintiffs could not afford to tender the unpaid balance, Plaintiffs believe they had no viable TILA claim and had no corresponding duty to disclose the claim on their bankruptcy schedules. Plaintiffs' summary of *Yamamoto* mischaracterizes its holding. The Ninth Circuit did not hold that Plaintiffs must "tender the unpaid balance as a preliminary matter." Opp. 7, ECF 60. Rather, the Ninth Circuit held that a court can, but is not required, to condition rescission on tender:

> [A] court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor performed its obligations… As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may

5

alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds… [w]hether the call is correct must be determined on a case-by-case basis…

*Yamamoto*, 329 F.3d at 1173.

Second, Plaintiffs argue, relying on their mistaken understanding of *Yamamoto*, that since they did not have the ability to tender, "the bankruptcy court lacked the power to determine…facts related to the TILA rescission claim," and thus, they did not have to disclose their TILA claim. Opp. 7, ECF 60.  Plaintiffs' position reveals a fundamental misunderstanding of the bankruptcy process and the purpose of disclosing contingent claims.  In bankruptcy, the debtor is responsible for disclosing *all* assets to the bankruptcy court, 11 U.S.C. § 521(a)(1) so that the trustee has the opportunity to evaluate their worth to determine whether the claims should be pursued by the estate.  In other words, once a debtor enters the bankruptcy process, it is no longer up to the debtor to unilaterally determine what claims the trustee should and should not pursue.  *See In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (explaining how under the definition of the bankruptcy estate, virtually all property of the debtor becomes property of the bankruptcy estate and holding, "[i]n fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [that definition]") (citing *In re Neuton*, 922 F.2d 1379, 1382-83 (9th Cir. 1990)).  Once Plaintiffs were aware of a potential TILA claim, it was the trustee's job, not Plaintiffs, to determine whether or not it was worth pursuing given the law surrounding tender at that time or whether the TILA claim could be timely filed.  Thus, Plaintiffs' failure to list the claim, means to the extent there is a viable TILA claim, it remains the property of the bankruptcy estate, and not the debtor.  *See Cusano v. Klein*, 264 F.3d 936, 947-48 (9th Cir. 2001) ("If [debtor] failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to [debtor]."); *see also Stein v. United Artists Corp.*, 691 F.2d 885, 891 (9th Cir.1982) ("It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy

1    has been finally closed up, immediately thereafter assert title to the property on the ground that the

2    trustee had never taken any action in respect to it.").

3           Of course, perhaps anticipating that they should have disclosed their TILA claim, Plaintiffs

4    also argue that they did disclose their TILA claim in their bankruptcy schedule.  Opp. 4, ECF 60.

5    According to Plaintiffs, "the bankruptcy papers adequately described the loans and put the Trustee

6    and defendants on notice of the claim."  *Id.*  Plaintiffs do not expand on this argument nor cite to

7    the portion of their bankruptcy papers they believe put the Trustee on notice of the claim.  At oral

8    argument, Plaintiffs' counsel argued that they listed the claims in "Section 4" of one of the

9    bankruptcy schedules but he could not identify which schedule.  This Court has reviewed

10   Plaintiffs' filing and is unable to see where they sufficiently identified a potential TILA claim.

11   Section 4 of Schedule B is for the following types of property: "Household goods and furnishings,

12   including audio, video and computer equipment" and for that section, Plaintiffs disclosed

13   "Furniture; kitchenware; home furnishings; decorations."  Exh. C to Mot. at  13, ECF 59-3.  To

14   the extent Plaintiffs believe that simply listing the loan is sufficient to put the trustee on notice of

15   all potential claims arising under it, including TILA claims, they are mistaken.  Not only would

16   such rule incentivize burying assets from the trustee, the bankruptcy code specifically says that "to

17   be either abandoned or administered, property must be properly scheduled."  11 U.S.C. §§ 554(c),

18   521(1) (emphasis added).  *See Cox v. Old Republic National Title Ins. Co.*, Case No. 15-cv-02253-

19   BLF, 2016 WL 301974, at *6 (N.D. Cal. Jan. 25, 2016) ("[U]nless formally scheduled, property is

20   not abandoned at the close of the estate, even if the trustee knew of the existence of the property

21   when the case closed") (citing *Vreugdenhill v. Navistar Intern. Transp. Corp.*, 950 F.2d 524, 526

22   (8th Cir. 1991)).

23          Accordingly, the first factor of judicial estoppel has been met.  Since Plaintiffs did not

24   disclose their TILA rescission claim in their bankruptcy schedule, they have now taken a position

25   that is "clearly inconsistent with [their] earlier position.

26          Turning to the second judicial estoppel factor, Plaintiffs obtained a discharge in their

27   bankruptcy case.  Exh. D to Mot., ECF 59-4.  Thus, Plaintiffs "succeeded in persuading a court to

28   accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later

United States District Court
Northern District of California

7

1   proceeding would create the perception that either the first or the second court was misled." *See*

2   *Hamilton*, 270 F.3d at 784; *see also In re Associated Vintage Grp., Inc.*, 283 B.R. 549, 566 (9th

3   Cir. B.A.P. 2002) ("In the bankruptcy context, the granting of a discharge is sufficient

4   'acceptance' of the accuracy of a schedules to provide a basis for judicial estoppel…").

5         Finally, regarding the third judicial estoppel factor, the Court finds Plaintiffs would "would

6   "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

7   "The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that

8   no claims exist and then subsequently to assert those claims for his own benefit in a separate

9   proceeding." *Hamilton*, 270 F.3d at 785 (citation and quotations omitted).

10        Accordingly, Plaintiffs' conduct in this action satisfies all three judicial estoppel factors

11   and they are judicially estopped from pursuing this lawsuit alleging violations of TILA.

12        Plaintiffs' second cause of action for declaratory relief also fails because it is premised on

13   their TILA claim.  *See, e.g.* Compl. ¶ 14 (under declaratory relief cause of action,

14   "Defendants…refuse to honor the rescission…"); *see also* Opp. 12, ECF 60 (arguing that this case

15   is appropriate for declaratory relief because "[t]he TILA rescission statute provides for the

16   resolution of this dispute by the Court").

17        Plaintiffs' third cause of action for quiet title fails because they have not alleged that they

18   paid the outstanding debt on the mortgage and have not sufficiently alleged that they offered, and

19   have a meaningful ability, to pay the outstanding debt.  *See Miller v. Provost*, 26 Cal.App.4th 103,

20   1707 (1994).[3]  Plaintiffs have given no indication to the Court that they have the ability to tender

21   the outstanding debt.  Moreover, Plaintiffs did not follow the requirements of Cal. Code Civ. P. §

22   761.020 and have not verified their Complaint, provided a legal description of the property, stated

23   adverse claims to their title held by Defendants, or stated a date as of which the determination of

24   title is sought.

25   _____

26   [3] In discussing their entitlement to quiet title, Plaintiffs cite *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016) and argues that this case  "grants borrowers standing to challenge void

27   assignments."  That may be true, but as the California Supreme Court noted, their decision in *Yvanova* expresses "no opinion as to whether plaintiff…must allege tender to state a cause of action for wrongful foreclosure."  *Id*. at 929 n.4.  Moreover, *Yvanova* is not relevant to this action

28   as Plaintiffs' complaint contains no allegations regarding void assignments.

United States District Court
Northern District of California

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion for judgment on the pleadings is GRANTED.

**IT IS SO ORDERED.**

Dated: July 29, 2016

BETH LABSON FREEMAN
United States District Judge